IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL RESOURCES
COUNCIL, et al.,

        Plaintiffs,

  v.

STEPHANIE HALLOCK,
et al.,

        Defendants.

Civil No. 02-1650-CO

ORDER

COONEY, Magistrate Judge:

    Plaintiffs filed this citizen suit against Stephanie Hallock, individually and officially, as the Director of the Oregon Department of Environmental Quality (DEQ) and Stephen Johnson, Administrator of the U.S. Environmental Protection Agency (EPA), alleging that defendants are violating the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 et seq., by failing to initiate and complete formal consultation with the U.S. Fish and Wildlife Service (USFWS) in connection with the issuance of a National Pollutant Discharge

Elimination System (NPDES) permit. (Amended Complaint ¶53). Plaintiffs seek a declaration that Ms. Hallock, individually and as Director of the DEQ has violated the ESA by failing to initiate and complete formal consultation with the USFWS and a declaration that DEQ's July 17, 2002 NPDES permit issued to the Klamath Irrigation District (KID) is void. (Amended Complaint Prayer for Relief ¶¶1-2). Plaintiffs request that the court issue a mandatory injunction ordering defendants, by a date certain, to complete full consultation with the USFWS. (Id. at ¶3). Plaintiffs also seek attorney fees, expenses, and costs. (Id. at ¶5).

Defendant Hallock moves to dismiss plaintiffs' claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6)(#80).

## I. **FACTS**

The following paragraphs paraphrase relevant portions of plaintiffs' amended complaint:

Plaintiffs' first claim for relief alleges that defendant Hallock is violating 16 U.S.C. § 1536(a)(2) by failing to complete formal consultation with the USFWS as to the effects of issuing an NPDES permit to the KID to discharge acrolein pesticide at locations where endangered fish exist. (Amended Complaint Claim One). Plaintiffs are various non-profit groups with members residing throughout Southern Oregon and Northern California. (Amended Complaint ¶¶ 8-15). The USFWS has designated as endangered, under the ESA, the Lost River

2 - FINDINGS AND RECOMMENDATION

sucker fish species and the short nose sucker fish species (endangered fish). (Id. at ¶18).

The discharge of certain pollutants permitted under the KID's NPDES permit have been found harmful to endangered fish which enter the KID canals and laterals and come into contact with NPDES permitted point source discharges. (Id. at ¶16). Individual endangered fish are among the fish species that exist in the KID's waterways, and individual endangered fish may be affected when they are exposed to know levels of acrolein from operations of the KID's canals and laterals. (Id. at ¶17).

Acrolein was found to be the most toxic of 15 herbicides tested for toxicity to fish. (Id. at ¶19). The application of acrolein, at levels where applications are effective for weed control, will adversely impact the existence and recovery of endangered fish. (Id. ¶20). The endangered fish are especially sensitive to the effects of acrolein. (Id. ¶21).

KID receives water from the Upper Klamath Lake and the Lost River, and the water is distributed through 200 miles of canals and lateral water distribution systems. KID applies acrolein in its smaller canals and ditches about 100 times each year. (Id. at ¶25).

The DEQ is the agency in Oregon that has accepted delegated primary authority of the federal NPDES program from the EPA. DEQ is responsible for preparing and issuing NPDES permits, inspections of permits holders to assure compliance with the permit terms,

3 - FINDINGS AND RECOMMENDATION

investigation and enforcement of unpermitted discharges, and review and approval of pollution control facilities. (Id. at ¶26).

DEQ receives significant federal funds to operate its program. (Id. at ¶27). Federal funds represent approximately 19 percent of the DEQ's operating budget. (Id. at ¶29). The DEQ and the EPA have entered into a Performance Partnership Agreement to specifically address two water quality programs. (Id. at ¶30). The DEQ and the EPA share responsibility for the Underground Injection Control Program. (Id. at ¶31).

In 2003, DEQ received approximately 17 percent of the personal services component of the DEQ's Water Quality program budget from the EPA. The DEQ also received funds from the EPA for its NPDES Permit Backlog Reduction Plan. The DEQ also received base program grants from the EPA for its water quality area. The full department funding amounts to about 35 million dollars for the DEQ's pollution control program. (Id. at ¶32). The EPA will evaluate DEQ's progress in its water quality permitting program deficiencies over the next two years. (Id. at ¶33).

Ms. Hallock, as DEQ Director, administers its NPDES program in conformance with 40 C.F.R. §§ 122.49 and 124.59 (through 40 C.F.R. § 123.25(a)(3)(35)). (Id. at ¶35). 40 C.F.R. § 122.49 contains a list of federal laws, including the ESA, that may apply to the issuance of NPDES permits. (Id. at ¶36). 40 C.F.R. § 124.59 requires consultation with agencies, including the USFWS, when an agency advises "the Director . . . that the imposition of specific conditions

4 - FINDINGS AND RECOMMENDATION

upon the permit is necessary to avoid substantial impairment of fish . . .".  (Id. at ¶37).

On February 9, 1995, the USFWS issued a biological opinion (BO), including an incidental take statement, to the Bureau of Reclamation (BOR) concerning the endangered fish, allowing acrolein application into the Projects canals, laterals and drains, including the KID's waterways.  (Id. at ¶38).  On February 2, 1996, the USFWS issued another BO to the BOR allowing acrolein applications into the Projects canals, laterals and drains.  (Id. at ¶39).  Each of the BOs noted the presence of endangered fish in the waterways of the KID.  The USFWS's 2002 BO noted the presence of juvenile endangered fish in the KID's main distribution canal.  (Id. at ¶40).  In 2002, the USFWS determined that the KID's NPDES permit was not an identical action to the actions that the BOR had consulted on previously with regard to acrolein. (Id. at ¶43).

50 C.F.R. § 402.14(a) requires federal agencies to review their actions to determine whether any actions may affect listed species or critical habitat.  If such a determination is made, then formal consultation is required.  (Id. at ¶46).

The EPA and DEQ are authorized by law to exercise control over the permitting system of the State of Oregon as to discharges of water pollution.  (Id. at ¶45).  The ESA requires federal agencies, and in this case Ms. Hallock, as DEQ Director, through EPA funding and oversight, to insure that the activities it authorizes, funds, or carries out are not likely to jeopardize the continued existence of

5 - FINDINGS AND RECOMMENDATION

an endangered species or destroy or adversely modify its critical habitat. (Id. at ¶46).

If a federal action may adversely affect a listed species or its critical habitat, the responsible federal agency must enter into formal consultation with the USFWS. The USFWS acknowledges that permitting discharges of acrolein into waters known to be occupied by endangered fish may cause adverse affects to the fish. (Id. at ¶47). Under the ESA, 16 U.S.C. § 1536(a)(2), and 50 C.F.R. § 402.14(a), defendants have a duty to initiate and conclude formal consultation with the USFWS when they know the results of the action that they authorize may affect a listed species or critical habitat. (Id. at ¶48).

Defendants have not initiated and completed necessary consultation with the USFWS as to issuing the NPDES permit to the KID to permit acrolein discharges. (Id. at ¶49). The KID's NPDES permit was issued on July 17, 2002 and the permit remains in effect today. (Id. at ¶50). Ms. Hallock, individually and as DEQ Director, is in violation of 16 U.S.C. § 1536(a)(2) and 50 C.F.R. § 402.14(a) by failing to initiate and conclude formal consultation based on her knowledge that issuing the NPDES permit to the KID for discharges of acrolein into waters inhabited by endangered fish may affect these endangered fish. (Id. at ¶53).

On May 31, 2005, Defendant Hallock issued a modified NPDES permit to the KID. (Id. at ¶77). Defendant Hallock, as Director of DEQ,

6 - FINDINGS AND RECOMMENDATION

must consult on the NPDES permit regarding acrolein applications. (Id. at ¶84).

The DEQ continues to receive federal funds from the EPA to assist in operating its water quality control section. (Id. at ¶85). This section includes the NPDES writing section. (Id. at ¶86). Defendant Hallock is in violation of 16 U.S.C. § 1536(a)(2) and 50 C.F.R. § 402.14(a) by failing to initiate and conclude formal consultation based on her knowledge that the modification to the NPDES permit issued to the KID for the discharge of acrolein residuals or acrolein into endangered fish inhabited waters may affect these endangered fish. (Id. at ¶89).

Plaintiffs request that the court declare that defendant Hallock, individually and as the DEQ Director, has violated the ESA and has unlawfully failed to initiate and complete formal consultation with the USFWS as to the effects of permitting the KID to apply acrolein or acrolein residuals to the KID's canals and laterals has on endangered fish. (Amended Complaint Prayer for Relief ¶1). Plaintiffs request that the court declare that the July 17, 2002 NPDES permit, as modified on May 31, 2005, is void for applying acrolein or acrolein residuals to its canals and laterals until DEQ or the EPA completes formal consultation regarding the application of acrolein or acrolein residuals to the KID's canals and laterals. (Id. at ¶2). Plaintiffs request that the court issue an injunction ordering defendants, by a date certain, to complete full consultation with the

7 - FINDINGS AND RECOMMENDATION

USFWS on the effects that acrolein or acrolein residuals have on endangered fish in the KID. (Id. at ¶3).

## II. LEGAL STANDARDS

Plaintiffs have the burden of proving the existence of subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 US 375, 377, 114 S. Ct. 1673, 1675 (1994); La Reunion Francaise SA v. Barnes, 247 F.3d 1022, 1026 (9th Cir. 2001). A Rule 12(b)(1) motion attacking subject matter jurisdiction may be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). When the motion is a facial attack, the court only considers the allegations in the complaint and any documents attached to the complaint or referred to in the complaint. Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3rd Cir. 2000). The court accepts all the material factual allegations in plaintiff's complaint as true. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-338 (9th Cir. 1996). "[J]urisdiction must be shown affirmatively, and that showing cannot be made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2nd Cir. 1998).

In ruling on a motion for failure to state a claim pursuant to Rule 12(b)(6), a complaint should not be dismissed unless it appears beyond a doubt that plaintiff can plead no set of facts in support of a claim. Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir. 2001)(citation omitted). The court accepts plaintiff's material

8 - FINDINGS AND RECOMMENDATION

allegations in the complaint as true and construes them in the light most favorable to plaintiff.  Id.

### III. DISCUSSION

Defendant Hallock moves to dismiss plaintiffs' claims based on the following arguments:

1) the ESA's citizen's suit provision, like the Clean Water Act's (CWA) citizen's suit provision, does not abrogate the state's Eleventh Amendment immunity, citing Burnett v. Carothers, 192 F.3d 52, 57 (2nd Cir. 1999);

2) the Ex Parte Young doctrine does not apply because: a) plaintiffs seek retrospective relief; b) the alleged violations are not fairly traceable to defendant Hallock; c) prospective relief would divest the state of jurisdiction; and d) plaintiffs' claim is barred, because the ESA's remedial structure dictates against federal court intervention; and

3) the ESA and its implementing regulations only require federal agencies to consult with the USFWS, not state officials or state agencies.

In response, plaintiffs argue that:

1) the Ninth Circuit in Natural Resource Defense Council v. California Department of Transportation, 96 F.3d 420 (9th Cir. 1996) and the Supreme Court in Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996) discuss the Eleventh Amendment and the Ex Parte Young doctrine with regard to the CWA's citizen's suit provisions and their holdings are contrary to the Second Circuit's position in Burnett;

9 - FINDINGS AND RECOMMENDATION

2) the DEQ has sufficient federal funding and oversight to require it to comply with the consultation requirements contained in the ESA and its implementing regulations;

3) the plaintiffs' complaint allegations satisfy the two-part test set forth in <u>Verizon Maryland Inc. v. Public Service Commission of Maryland</u>, 535 U.S. 635 (2002) - plaintiffs have pled a continuing violation of federal law as set forth in paragraphs 49, 53, and 89 of the amended complaint and they seek a prospective injunction to prevent further violations as set forth in paragraph 3 of the claim for relief in the amended complaint;

4) the Ex Parte Young doctrine allows the type of injunctive and declaratory relief sought by plaintiffs;

5) the alleged violations of the ESA are fairly traceable to defendant Hallock;

6) the relief sought would not divest the state of jurisdiction to regulate Oregon's NPDES program; and

7) plaintiffs' claims are not barred by the ESA, which allows suits against any person who violates the ESA.

In reply, defendant Hallock argues that:

1) plaintiffs' claims are retrospective rather than prospective;

2) this suit would divest the state of sovereignty to regulate water quality;

3) the suit is barred, because a detailed remedial scheme is in place under the ESA; and

10 - FINDINGS AND RECOMMENDATION

4) there is insufficient federal funding to the DEQ's NPDES program to qualify as a federalized program.

A.  **The ESA's Citizen's Suit Provision Authorizes Citizens To Bring Ex Parte Young Suits Against State Officials and the ESA's Remedial Structure Does Not Dictate Against Federal Court Intervention**

The Eleventh Amendment prohibits federal courts from entertaining actions by private citizens against state governments, including state officials in their official capacity, unless the state consents to suit. Cardenas v. Anzai, 311 F.3d 929, 934 (9th Cir. 2002).

> The Supreme Court set forth an exception, however, in Ex parte Young. Under the Ex parte Young doctrine, a plaintiff may maintain a suit for prospective relief against a state official in his official capacity, when the suit seeks to correct an ongoing violation of the Constitution or federal law. . . .

Id. at 934-935 (citations omitted).

Under the Ex parte Young doctrine, the court may award prospective injunctive relief that governs an official's future conduct, but it may not award retroactive relief that requires the payment of funds from the state treasury. Natural Resources Defense Council, 96 F.3d at 422 (citations omitted).

In Natural Resources Defense Council, the Ninth Circuit found that the Supreme Court's decision in Seminole Tribe of Florida did not bar a citizen's suit against the director of California's Department of Transportation for violations of the CWA. Id. at 424-425. The Ninth Circuit specifically noted the Supreme Court's comparison of the Indian Gaming Regulatory Act (IGRA), a comprehensive remedial scheme

11 - FINDINGS AND RECOMMENDATION

limiting the availability of an action under the Ex parte Young doctrine, to the CWA, a "limited remedial scheme" where lower court's have found that Congress implicitly authorized suit under Ex parte Young. Id. at 423-424. The Ninth Circuit, relying on the language of the CWA's citizen suit provision, which provides that citizens may commence a civil action against any person, including any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution, found that "Congress implicitly intended to authorize citizens to bring Ex parte Young suits against state officials with the responsibility to comply with clean water standards and permits. Id. at 424.

The ESA's citizen suit provision contains language that is identical to the CWA's citizen suit provision. 16 U.S.C. § 1540(g)(1)(A). The ESA also defines the term "person" to include any officer, employee, agent, depart, or instrumentality of any state. 16 U.S.C. § 1532(13).

In Strahan v. Coxe, 127 F.3d 155 (1st Cir. 1997), cert. denied, 525 U.S. 830 (1998), the First Circuit held that Ex parte Young actions may be brought to enjoin continuing violations of the ESA's take prohibition. Judge Brown, in Pacific Rivers Council, et al v. James E. Brown, et al., 02-243-BR (D.Or. Opinion and Order December 23, 2002), relying on the Supreme Court's reasoning in Seminole Tribe, Ninth Circuit's reasoning in Natural Resources Defense Council, and the First Circuit's reasoning in Strahan, found that the plaintiffs' action against defendant James Brown, the State Forester for the

12 - FINDINGS AND RECOMMENDATION

Oregon department of Forestry, was not barred by the Supreme court's decision in Seminole Tribe. This court agrees with the reason set forth in the above cases and finds that the plain language of the ESA's citizen suit provision allows citizen's to bring suits against state officials under the Ex parte Young doctrine and that the CWA does not constitute a comprehensive remedial scheme like the IGRA. Therefore, defendant's motion to dismiss on these grounds is denied.

**B. Plaintiffs Do Not Seek Retrospective Relief**

Plaintiffs seek a declaration that defendant Hallock, individually and as DEQ Director, has violated the ESA and has unlawfully failed to initiate and complete formal consultation with the USFWS as to the effects of the KID's NPDES permit on endangered fish. Defendants, relying on Puerto Rico Aqueduct v. Metcalf &Eddy, Inc., 506 U.S. 139 (1993) argue that plaintiffs' claim seeks retrospective relief for past violations of federal law. The Ninth Circuit in Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist., 13 F.3d 305, 309-310 (9th Cir. 1993), cert. denied, 513 U.S. 873 (1994), found that the Eleventh Amendment does not bar the court from considering a defendant's past conduct as it relates to ongoing or future violations. The declaration sought by plaintiffs in this case is in support of their request for injunctive relief and is not barred under the Ex parte Young doctrine. See Cardenas, 311 F.3d at 938; See also Pacific Rivers Council, Opinion and Order at 16.

13 - FINDINGS AND RECOMMENDATION

**C. The Alleged Violations Of The ESA Are Fairly Traceable To Defendant Hallock**

Defendant, relying on Snoeck v. Brussa, 153 F.3d 984 (9th Cir. 1998) argues that the alleged violations of the ESA are not fairly traceable to defendant Hallock.  This case is distinguishable from Snoeck.  In Snoeck, the plaintiffs filed suit against the Nevada Commission on Judicial fitness regarding confidentiality restrictions imposed on them by the Commission and seeking a declaration that the rules were unconstitutional.  Id. at 985.  The Ninth Circuit found that the Eleventh Amendment barred the suit because the Commission was not free to define its own procedures or amend the rules.  Id. at 987.  The court also found that the Commission did not have contempt power to enforce the rules, and plaintiffs' rights could not be alleviated by any pressure the court might seek to apply on the Commission.  Id.

In this case, plaintiffs have allege that defendant Hallock, as DEQ Director, administers the NPDES program and has the power to issue or deny permits and set such conditions as are necessary to meet CWA standards and comply with other federal laws, including the ESA.  The court finds that plaintiffs allegations are sufficient to demonstrate that the alleged violations of the ESA are fairly traceable to defendant Hallock.  See Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697 (9th Cir. 1992)(defendant had a specific connection to the challenged statute that limited the number of judges that could be appointed to the state court as one defendant had the duty to appoint judges to newly created positions and the other defendant had the duty

14 - FINDINGS AND RECOMMENDATION

to certify subsequent elections to those positions); See also Pacific Rivers Council, Opinion and Order at 19-21.

**D. THE RELIEF SOUGHT BY PLAINTIFFS WOULD NOT DIVEST THE STATE OF JURISDICTION TO REGULATE WATER QUALITY IN THE STATE OF OREGON**

Defendant argues that the prospective relief sought by plaintiffs should not be allowed because it would divest the state of its jurisdiction to regulate water quality in the State of Oregon, citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997). In Coeur d'Alene, the Tribe brought an action against the state and state officials and agencies seeking an order establishing its ownership of submerged lands within its reservation and enjoining the defendants from interfering with the Tribe's ownership interests. Id. at 264-265. The court did not question the continuing validity of the Ex parte Young doctrine, but found that the suit was barred because it was a quiet title suit which implicated the state's sovereign interest in ownership and control of submerged lands within the state, which transformed the suit into one against the state rather than state officials. Id. at 269-288.

The Ninth Circuit has "interpreted Coeur d'Alene narrowly" and has "rejected efforts to expand the list of core sovereignty exceptions to Ex parte Young." Cardenas, 311 F.3d at 938. The Ninth Circuit, in Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1048 (9th Cir. 2000), found that in determining whether a suit is barred the court must ask whether the relief requested would be so

15 - FINDINGS AND RECOMMENDATION

much of a divestiture of the state's sovereignty as to render the suit as one against the state.

Defendant argues that if the court granted the relief requested by the plaintiffs, defendant Hallock would have only two possible courses of action: 1) to not issue an NPDES permit or 2) to expand the NPDES permit program to include consultation with federal authorities. Defendant argues the legal effect would be to divest defendant Hallock of any authority to regulate and create a blanket oversight of NPDES permit issuance.

The court finds that the relief sought in this case will not effect the state's ownership of its lands.  Plaintiffs seek an injunction prohibiting the director from issuing NPDES permits without consulting with the USFWS in circumstances where they may have an effect on endangered species.  The court finds that this would not divest the state of all regulatory authority over the NPDES program.

**Plaintiffs' Allege Sufficient Federal Funding and Regulation To Apply The ESA's Consultation Requirements**

Defendant Hallock argues that the consultation requirements of the ESA and its implementing regulations do not apply to her. Plaintiffs argue that because of the substantial federal funding and oversight the DEQ receives and the position of the UFSWS, Ms. Hallock is a proper party.

Plaintiffs have alleged:

The DEQ is the agency in Oregon that has accepted delegated primary authority of the federal NPDES program from the EPA. DEQ is

16 - FINDINGS AND RECOMMENDATION

responsible for preparing and issuing NPDES permits, inspections of permits holders to assure compliance with the permit terms, investigation and enforcement of unpermitted discharges, and review and approval of pollution control facilities. (Id. at ¶26).

DEQ receives significant federal funds to operate its program. (Id. at ¶27). Federal funds represent approximately 19 percent of the DEQ's operating budget. (Id. at ¶29). The DEQ and the EPA have entered into a Performance Partnership Agreement to specifically address two water quality programs. (Id. at ¶30). The DEQ and the EPA share responsibility for the Underground Injection Control Program. (Id. at ¶31).

In 2003, DEQ received approximately 17 percent of the personal services component of the DEQ's Water Quality program budget from the EPA. The DEQ also received funds from the EPA for its NPDES Permit Backlog Reduction Plan. The DEQ also received base program grants from the EPA for its water quality area. The full department funding amounts to about 35 million dollars for the DEQ's pollution control program. (Id. at ¶32). The EPA will evaluate DEQ's progress in its water quality permitting program deficiencies over the next two years. (Id. at ¶33). DEQ receives significant federal funds to operate its program. (Id. at ¶27). Federal funds represent approximately 19 percent of the DEQ's operating budget. (Id. at ¶29). The DEQ and the EPA have entered into a Performance Partnership Agreement to specifically address two water quality programs. (Id. at ¶30). The

17 - FINDINGS AND RECOMMENDATION

DEQ and the EPA share responsibility for the Underground Injection Control Program.  (Id. at ¶31).

In this case, the court finds that Plaintiffs have pleaded sufficient federal funding and oversight to survive a motion to dismiss.  See Sierra Club v. U.S. Fish and Wildlife Service, 235 F.Supp. 2d 1109, 1120 (D.Or. 20002).

### IV.  ORDER

Based on the forgoing, it is ordered that defendant Hallock's motion to dismiss (#80) is denied.

It is further ordered that dispositive motions are due May 22, 2006, response briefs are due June 21, 2006, and reply briefs are due July 5, 2006.

DATED this ____24_____ day of April, 2006.

_____/s/_____

UNITED STATES MAGISTRATE JUDGE

18 - FINDINGS AND RECOMMENDATION