IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL RESOURCES
COUNCIL, et al.,

        Plaintiffs,

   v.

STEPHANIE HALLOCK,
et al.,

        Defendants.

Civil No. 02-1650-CO

ORDER

COONEY, Magistrate Judge:

    Plaintiffs filed this citizen suit against Stephanie Hallock, individually and officially, as the Director of the Oregon Department of Environmental Quality (DEQ) and Stephen Johnson, Administrator of the U.S. Environmental Protection Agency (EPA), alleging that defendants are violating the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 et seq., by failing to initiate and complete formal consultation with the U.S. Fish and Wildlife Service (USFWS) in connection with the issuance of a National Pollutant Discharge

Elimination System (NPDES) permit. (Amended Complaint ¶53). Plaintiffs seek a declaration that Ms. Hallock, individually and as Director of the DEQ has violated the ESA by failing to initiate and complete formal consultation with the USFWS and a declaration that DEQ's July 17, 2002 NPDES permit issued to the Klamath Irrigation District (KID) is void. (Amended Complaint Prayer for Relief ¶¶1-2). Plaintiffs request that the court issue a mandatory injunction ordering defendants, by a date certain, to complete full consultation with the USFWS. (Id. at ¶3). Plaintiffs also seek attorney fees, expenses, and costs. (Id. at ¶5).

Before the court are defendants' motions for summary judgment (#89 and #93) and plaintiffs' motion for summary judgment (#97). The parties have consented to a magistrate judge hearing their case.

## I. **FACTS**

Plaintiff Oregon Natural Resources Council Fund (ONRC) is a non-profit corporation with over 5000 members. (Wood Decl. ¶ 4). ONRC's mission is to "aggressively protect and restore Oregon's wild lands, wildlife, and waters as an enduring legacy." (Id.). One of ONRC's five conservation programs is devoted entirely to the Klamath Basin. (Id. at ¶ 11). ONRC's "goal is to defend, conserve, and restore the biodiversity of the 10.5 million-acre basin in southern Oregon and northern California and to foster steps towards sustainable agriculture in the region." (Id.).

ONRC has been actively involved in protecting the endangered Lost River and shortnose suckers (endangered fish) and water quality in the


Klamath River for many years through litigation. (Id. at ¶¶ 7, 8 and 12). ONRC and plaintiff Headwaters, Inc. submitted comments to the Oregon Department of Environmental Quality (DEQ) on the draft Klamath Irrigation District (KID)'s National Pollution Discharge Elimination System (NPDES) permit. (Id. at ¶ 9). In those comments ONRC and Headwaters requested that the DEQ and EPA consult with the USFWS before issuing the permit. (Id. at ¶¶ 9 and 10). ONRC also commented on the restructured Acrolein general changes to the permit. (Id. at ¶ 9).

Wendell Wood is a member of ONRC. (Id. at ¶3). He is also ONRC's Wildlands Advocate. (Id.). He served as ONRC's southern Oregon Filed Representative from 1993 to 2005. (Id.).

ONRC's members regularly participate in activities such as hiking, backpacking, wildlife observation, cross-country skiing, fishing, nature photography, swimming, and river and lake boating throughout Oregon, and, where it is possible, observe endangered fish. (Id. at ¶ 13). Mr. Wood hosted organized field trips in the Klamath Basin and to upper basin headwaters significant to the existence of the endangered fish. (Id.).

Mr. Wood regularly canoes and kayaks with friends and family on the Klamath and Lost River in the areas where endangered fish are known to exist and in the endangered fish's proposed critical habitat. (Id. at ¶ 14). He enjoys these activities, finds them personally fulfilling, and plans to engage in these activities in 2006 and into the future. (Id.).

Headwaters is a non-profit conservation organization which focuses on the Klamath-Siskiyou Bioregion in southwest Oregon and northwest California. (Williams Decl. ¶ 5). Headwaters' mission is to conserve, protect, and restore ecosystems, clean water, and biodiversity in the Klamath-Siskiyou Bioregion. (Id. at ¶ 6). Headwaters is a member of the Coalition for the Klamath Basin, which is dedicated to conserving and restoring the lands and waters of the Klamath Basin to ensure the survival of its unique fish and wildlife. (Id. at ¶ 7). Headwaters has an organizational interest in: 1) ensuring clean and adequate water supplies for fish, wildlife, and people in the Klamath Basin; 2) ensuring the survival of the Basin's unique fish and wildlife, including endangered fish; 3) restoring access to the upper basin for native fish; and 4) reducing the risk to the Basin's waterways posed by the use of herbicides and pesticides. (Id. at ¶ 8).

Members of Headwaters use, enjoy, and recreate in the Klamath Basin. (Id. at ¶ 9). They recreate on or in the waters of the Lost River as well as in and around the irrigation canals within the Project's irrigation districts, in the immediate vicinity of, and downstream from these Districts' discharges, including the KID, canals and laterals. (Id.). Headwaters members use the Lost River watershed to recreate, observe and enjoy wildlife in and around the irrigation canals and waters of the Lost River and Klamath Basin. (Id.).

Members have an aesthetic and ecological interest in the natural beauty and biodiversity of the Lost River watershed, the Tule Lake

4 - ORDER

National Wildlife area, the Lower Klamath National Wildlife Refuge, and other areas of the Klamath Basin in the area of and downstream from the District's discharges. (Id. at ¶ 10). Members hike, bike, walk, fish, boat, and photograph in the Lost River watershed and around these wildlife refuge areas. (Id.). Cindy Deacon Williams and other Headwaters members have developed recreational, conservation, and other interests in the endangered fish, and other native fish and wildlife species of the Klamath Basin. (Id. at ¶11).

Headwaters has been activity involved in litigation regarding the use of acrolein by irrigation districts. (Id. at ¶¶ 13and 14). Headwaters participated in the public process regarding the KID's NPDES permit at issue in this case, and requested the DEQ and the EPA consult with the USFWS regarding the issuance of the permit. (Id. at ¶ 18). Headwaters and its members are injured by the issuance of this permit without consultation under the ESA. (Id. at ¶19). This injury is ongoing as the permit does not expire until June 30, 2007. (Id. at ¶ 19). This injury would be redressed if the court required the DEQ and the EPA to consult with the USFWS. (Id. at ¶ 21).

Northcoast Environmental Center (NEC) is a nonprofit public interest organization with more than 4000 members. (McKay Decl. ¶ 3). The purpose of the organization is "to bring about a more complete understanding of the effects of human activities upon the environment by making available information about such activities and to attempt to prevent the creation of unnecessary environmental conditions deemed deleterious to human beings or to flora and fauna". (Id. at ¶4). NEC

has been involved in various lawsuits to protect its interests, as well as other activities. (Id. at ¶¶ 3, 5, 6).

One of NEC's goals is to defend, conserve, and restore the biodiversity of the Klamath Basin. (Id. at ¶11). The major activities of the campaign include protecting endangered and threatened species in the Klamath Basin. (Id.).

Many of its members visit and use the Lost River, Tule Lake, the Lower Klamath Wildlife Refuges, and the Klamath River. (Id. at ¶3). NEC members include sports and commercial fishermen, bird watchers, and people with an interest in protecting endangered species and aquatic ecosystems. (Id.). Many of NEC members live in the upper Klamath Basin because of such amenities as the fish species common to the wildlife refuges. (Id. at ¶ 8). Many members visit the area to fish, study nature, and hike. (Id.). Certain members have developed recreational and other interests in the endangered fish. (Id. at ¶13).

Possible harm from the use of acrolein by the KID affects NEC's members ability to enjoy and view the endangered fish. (Id. at ¶16). NEC's members are injured by DEQ's and/or EPA's failure to consult with the USFWS regarding the impacts of the application of acrolein to waters where or near endangered fish exist. (Id. at ¶ 19). This injury could be redressed by a favorable decision from the court. (Id. at ¶ 20).

6 - ORDER

Stephanie Hallock is the Director of the Oregon DEQ(Amended Complaint ¶35). In her official position as Director, she is not a federal or state agency. ORS 468.030; ORS 468.045.

The Oregon DEQ administers the NPDES permit program for the state of Oregon. (Amended Complaint ¶26). The DEQ issued an NPDES permit to the KID on July 15, 2002, and issued a modified permit on May 31, 2005. (State's Exhibits 2 and 4).

The modified permit regulates the residual acrolein discharge within the irrigation system, but does not authorize the discharge of the herbicide residual into the canals and ditches in California. This is accomplished through the use of gates within treatment areas and the monitoring of water at and near the gates to ensure that acrolein is not discharged from the irrigation district. (State's Exhibit 4 at 2-7). There are no allegations in the complaint that KID is violating the terms of the revised permit and there is no evidence of any violations of the terms of the modified.[1]

## II. **LEGAL STANDARDS**

Pursuant to Rule 56 ©) of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56 (c); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir.), cert. denied, 502

---

[1] Mr. Wood's declarations do not establish that there have been any violations of the terms of the modified permit.

U.S. 994 (1991). In deciding a motion for summary judgment, the court must determine, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994)(citations omitted). The parties bear the burden of identifying the evidence that will facilitate the court's assessment. Id.

The moving party bears the initial burden of proof. See Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1435 (9th Cir.), cert. denied, 516 U.S. 987 (1995). The moving party meets this burden by identifying portions of the record on file which demonstrates the absence of any genuine issue of material fact. Id. "[T]he moving party . . . need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390, 393 (4th Cir. 1994), cert. denied, 513 U.S. 1191 (1995)(citation omitted); See City of Mt. Pleasant, Iowa v. Associated Electric Co-op, Inc., 838 F.2d 268, 273-274 (8th Cir. 1988)(it is sufficient for the movant to argue that the record does not contain an issue of fact and to identify that part of the record that supports that assertion).

In assessing whether a party has met their burden, the court must view the evidence in the light most favorable to the nonmoving party. Allen v. City of Los Angeles, 66 F.3d 1052 (9th Cir. 1995). All reasonable inferences are drawn in favor of the nonmovant. Id.

8 - ORDER

If the moving party meets their burden, the burden shifts to the opposing party to present specific facts which show there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816 (9th Cir. 1995), cert. denied, 517 U.S. 1167 (1996).  The nonmoving party cannot carry their burden by relying solely on the facts alleged in their pleadings.  Leonard v. Clark, 12 F.3d 885, 888 (9th Cir. 1994).  Instead, their response, by affidavits or as otherwise provided in Rule 56, must designate specific facts showing there is a genuine issue for trial. Id.

### III. DISCUSSION

**Standing**

   Plaintiffs argue that they have standing to bring this action. In response, the state defendants argue that: 1) plaintiffs do not have standing because they have not suffered an "injury in fact" - plaintiffs have not demonstrated that they have "an interest in threatened or endangered fish that somehow make their way into the irrigation system and, but for exposure to acrolein residual, and despite the hazards of irrigation, would have made it back out of the system safely"; 2) any "injury in fact" is not fairly traceable" to Director Hallock's conduct in either her individual or official capacity - Director Hallock is not required to comply with Section 7 of the ESA and any fish that are killed within the irrigation system are lost because of irrigating, not because of any activity regulated by the NPDES permit; 3) the court cannot "likely" redress plaintiffs' injury for the above reasons.  Plaintiffs argue that: 1) they have

9 - ORDER

standing to protect endangered fish that have migrated into the irrigation canals, citing Defenders of Wildlife v. U.S. Environmental Protection Agency, 420 F.3d 946 (9th Cir. 2005); 2) the agency has the burden of showing the effect of the proposed action; 3) fish do get into the canals, and plaintiffs use and enjoyment of the fish in adjacent public waters is sufficient to allow them standing to sue for the enforcement of procedures which may protect endangered fish; 4) plaintiffs' injuries would be redressed by a decision from the court, because (a)the EPA or DEQ would have to reconsider the permit and impose conditions after consultation with the USFWS and (b) even if the permit conditions did not change, plaintiffs procedural injury would be remedied.

The party invoking jurisdiction has the burden of establishing the elements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). An organization has standing to bring suit on behalf of its members when: 1) the members would have standing to sue in their own right; 2) the interests at stake are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires participation of individual members in the suit. Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 181 (2000).

The interests at stake in this case are germane to the purposes of the plaintiff organizations. Neither the claims asserted nor the relief requested require the participation of individual members.

10 - ORDER

Therefore, the court must determine if any of the individual members of the organizations have standing.

Standing involves both constitutional and prudential limitations. Warth v. Seldin, 422 U.S. 490, 498 (1975); Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1057 (9th Cir. 2004)(citation omitted). Constitutional standing concerns whether the plaintiff satisfies Article III's case or controversy requirement. Id. To establish constitutional standing, the

> plaintiff must have suffered an injury in fact - an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Id. at 560-561.

"To establish injury in fact for purposes of Article III, a plaintiff must not only show that the agency's disregard of a procedural requirement results in an increased risk of environmental harm, but a plaintiff must also show the increased risk is to the litigant's concrete and particularized interests." Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 449 (10th Cir. 1996)(citations omitted). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be

11 - ORDER

lessened' by the challenged activity." <u>Friends of the Earth, Inc.</u>, 528 U.S. at 181.

Plaintiffs have submitted the declarations of its members to establish standing. Their members use the area around the canals and have interests in the endangered fish at issue. They have alleged that they will be injured and their enjoyment of the area will be lessened if the DEQ or the EPA fails to consult with the USFWS to protect the endangered fish at issue. The court finds that the declarations establish that the individuals will suffer a concrete and particularized, actual or imminent injury that is fairly traceable to the challenged action of the defendants, and it is likely that the injury would be redressed by a favorable decision. <u>See</u> <u>Defenders of Wildlife</u>, 420 F.3d at 956-958. Therefore, the individual members have standing and the organizational plaintiffs have standing.

**Duty to Consult**

>16 U.S.C. §1536 (a)(2) provides that:
>
>Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

16 U.S.C. §1532(7) defines a federal agency as "any department, agency, or instrumentality of the United States.

12 - ORDER

Defendant Hallock in her individual or official capacity is not a federal agency and as such she cannot be required to comply with the ESA consultation requirements.  See American Forest and Paper Ass'n. v. U. S. Environmental Protection Agency, 137 F.3d 291, 299 (5th Cir. 1998)(holding that the EPA could not require the state to agree to comply with the ESA's consultation requirement); See also Defenders of Wildlife, 420 F.3d at 951 (stating in dicta that the ESA consultation requirement only applies to federal agencies, not to state bodies).

The plaintiffs have not presented any cases in which courts have found that a state would be required to comply with the ESA consultation requirements because a state program was "federalized" by virtue of receiving state funding.  This court declines to create new law on this issue.

Based on the foregoing, defendant Hallock is entitled to summary judgment and plaintiffs are not.

Defendant Johnson in his individual or official capacity is not required to comply with the ESA consultation requirements as it is the State of Oregon that issued the KID permit, not the EPA.  See Defenders of Wildlife, 420 F.3d at 971 (the court stated in dicta that the transfer of the NPDES permitting program from the EPA to the state would result in the loss of ESA consultation on many projects).  The EPA's review of an NPDES permit or the failure to object to the permit does not constitute federal action which would trigger the ESA consultation requirement.  See District of Columbia v. Schramm, 631

13 - ORDER

F.2d 854,862 (D.C. Cir. 1980)(EPA's failure to object to a permit did not constitute EPA issuing the permit). Plaintiffs have failed to establish that the EPA has a duty to review all state issued permits under the applicable regulations, and, even if such a duty exists, as stated above, this does not trigger any duty on the part of the EPA to consult under the ESA. Based on the foregoing, Defendant Johnson is entitled to summary judgment and plaintiffs are not.

## IV. ORDER

Based on the forgoing, it is ordered that Defendant Hallock's defendant's motion for summary judgment (#89) is granted, Defendant Johnson's motion for summary judgment (#93) is granted, Plaintiff's motion for summary judgment (#97) is denied. This case is dismissed and the clerk is directed to enter a judgment in favor of defendants.

DATED this ____29____ day of November, 2006.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE